# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTIAN AGUIRRE-HODGE,

               Plaintiff,

v.

CHARLES LARSON,

               Defendant.

OPINION
and ORDER

18-cv-995-jdp

---

Pro se plaintiff Christian Aguirre-Hodge contends that defendant Dr. Charles Larson violated the Eighth Amendment and Wisconsin negligence law by canceling Aguirre-Hodge's

scheduled knee replacement surgery. Both parties move for summary judgment. Dkt. 75; Dkt. 82. Based on the totality of the care that Aguirre-Hodge received, no reasonable jury could conclude that Larson disregarded Aguirre-Hodge's knee pain. Larson's decision to cancel the surgery pursuant to prison protocols was not so blatantly inappropriate that it demonstrates deliberate mistreatment. And after Larson canceled the surgery, he took reasonable steps to reschedule it. I will deny Aguirre-Hodge's motion regarding his Eighth Amendment claim and grant Larson's. Because I am dismissing Aguirre-Hodge's constitutional claim, I

will relinquish jurisdiction over his state-law negligence claim and dismiss it without prejudice.

Aguirre-Hodge also seeks to amend his complaint to add new claims against new defendants. I will deny the motion. It is simply too late in the case to add new claims, and Aguirre-Hodge does not explain why he did not move to amend his complaint earlier.

## UNDISPUTED FACTS

The following facts are undisputed except where noted.

Defendant Dr. Charles Larson was Aguirre-Hodge's primary care provider at Fox Lake Correctional Institution. Aguirre-Hodge suffered from chronic pain in his left knee. Larson treated Aguirre-Hodge with ice, pain medication, and steroid injections. Aguirre-Hodge told Larson that those treatments did not relieve his pain, so Larson approved an offsite consultation with an orthopedic specialist in January 2018. The nurse practitioner who conducted the consultation concluded that

conservative measures to address Aguirre-Hodge's knee pain had failed, and he would have to live with his symptoms or undergo joint replacement. The report from the consultation noted that joint replacement was an elective procedure and would "require institutional approval." Dkt. 77-1, at 10.

Under Department of Corrections (DOC) policy, all "non-urgent" surgeries must be authorized by the DOC's Bureau of Health Services. Dkt. 86-1, at 2. At some point following the consultation, Aguirre-Hodge was scheduled for a knee replacement surgery without prior

authorization.[1] Near the end of February, Larson discovered that Aguirre-Hodge had been scheduled for the surgery without authorization, and Larson canceled it. A few days later, Aguirre-Hodge had an appointment with Larson to discuss the institutional approval process. After this meeting, Larson submitted a request to authorize Aguirre-Hodge's knee surgery to the Bureau of Health Services. Dkt. 87-1, at 5. The bureau's medical director, Dr. Paul Bekx, denied the request on the grounds that

---

[1] It's unclear when the surgery was scheduled and who scheduled it. Larson "suspect[s] the HSU [health services unit] program assistant mistakenly scheduled it." Dkt. 88, ¶ 14. In his briefs, Aguirre-Hodge says that Larson scheduled the surgery, but he doesn't support that statement with evidence. *See* Dkt. 76, at 2.

Aguirre-Hodge's x-rays showed "only mild djd [degenerative joint disease]." *Id.* at 6. The knee replacement surgery for Aguirre-Hodge was not rescheduled during his time at Fox Lake.

Aguirre-Hodge was transferred to New Lisbon Correctional Institution later that year. Aguirre-Hodge received knee replacement surgery in February 2019, about a year after his first off-site consultation with an orthopedic specialist. I will discuss more facts as they become relevant to the analysis.

## ANALYSIS

## A.  Summary judgment motions

The Eighth Amendment prohibits prison officials from consciously disregarding prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). To prevail on an Eighth Amendment medical care claim, a prisoner must prove that he suffered from an objectively serious medical condition and that staff consciously failed to take reasonable steps to help him. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Delay in treatment may constitute conscious disregard if the delay unnecessarily prolongs the prisoner's pain.

*Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). Aguirre-Hodge contends that Larson unnecessarily prolonged his pain by canceling his knee replacement surgery. Larson doesn't dispute that Aguirre-Hodge's chronic knee pain was an objectively serious medical condition, but he disputes that he consciously disregarded Aguirre-Hodge's knee problems.

Both sides move for summary judgment. Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court

evaluates each motion separately, construing the facts and drawing all reasonable inferences from those facts in favor of the nonmoving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). The court must grant summary judgment when no reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether Larson consciously disregarded Aguirre-Hodge's knee problems, I must look at the totality of care that Aguirre-Hodge received. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). Based on the treatment that Aguirre-

Hodge received, no reasonable jury could conclude that Larson acted with conscious disregard to Aguirre-Hodge's pain. Larson treated Aguirre-Hodge with ice, pain medication, and steroid injections. And after Larson canceled the surgery, he took steps to re-schedule it. Aguirre-Hodge would have preferred to have had the surgery when it was originally scheduled. But prisoners don't have a constitutional right to their preferred course of treatment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A doctor's care decision violates the constitution only if it is "so blatantly inappropriate as to evidence intentional mistreatment likely to

seriously aggravate [a patient's] condition." *Arnett v. Webster,* 658 F.3d 742, 751 (7th Cir. 2011). Inadvertent error, negligence, gross negligence, and ordinary malpractice are not enough to violate the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). Instead, the care decision must depart from professional standards to such a degree "that no minimally competent professional" would have made the same decision. *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). A prisoner can establish that a doctor departed from accepted professional standards by showing that the professional "refused to take instructions from a

specialist" or "fail[ed] to follow existing protocol."
*Petties,* 836 F.3d at 730.

Here, the record shows that Larson was
following protocol when he canceled
Aguirre-Hodge's surgery. DOC policy provides that
medical staff must obtain prior authorization from
the DOC's Bureau of Health Services before
scheduling surgeries that are "non-urgent."
Dkt. 86-1, at 2. It's unclear from the record whether
Larson had the authority to decide whether Aguirre-
Hodge's procedure was non-urgent and thus subject
to DOC approval. But even if I assume that Larson
was responsible for categorizing Aguirre-Hodge's

surgery as non-urgent, that decision was not so blatantly inappropriate that it demonstrates intentional mistreatment. Under DOC policy, a procedure is non-urgent if the condition it addresses "does not represent a significant threat to the patient's general medical health, and which is not likely to pose such a threat in the foreseeable future." Dkt. 86-1, at 2. A condition can be non-urgent even if it "involve[es] persistent pain" such that adequate care requires scheduling the procedure as soon as reasonably practicable. *Id*. Urgent procedures, by contrast, are those where "a delay in treatment would present a medically

unacceptable risk for serious bodily harm, disability, or further deterioration in the inmate patient's condition." *Id*. Aguirre-Hodge was suffering from significant pain, so adequate care could have required scheduling the procedure as soon as practicable. But nothing in the record suggests that a delay to obtain prior authorization for the surgery would present a risk of serious bodily harm to Aguirre-Hodge. And Larson's decision aligns with the judgment of the nurse who performed Aguirre-Hodge's orthopedic consultation, who noted that the surgery was elective and would require approval from the prison.

But even if Larson erred when he concluded that Aguirre-Hodge's surgery was non-urgent and required prior authorization, that error demonstrates, at most, medical negligence; it does not show that Larson consciously disregarded Aguirre-Hodge's medical needs. After Larson canceled the surgery, he took reasonable steps to obtain the proper approvals. Larson met with Aguirre-Hodge to discuss the approval process, and he later submitted a prior authorization request to the Bureau of Health Services. Dkt. 87-1, at 5. Larson was not required to do anything more. Aguirre-Hodge identifies no evidence that Larson

had the authority to schedule the surgery after the request had been denied. No reasonable jury could conclude that Larson's actions violated the Eighth Amendment, so I will grant summary judgment to Larson on Aguirre-Hodge's constitutional claim.

Aguirre-Hodge also asserts a state-law negligence claim against Larson. The court could exercise supplemental jurisdiction over this claim. But in the Seventh Circuit, the usual practice is to dismiss state-law claims when all federal claims have been dismissed prior to trial. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). I see no reason to depart from the circuit's general rule in this case.

I will dismiss Aguirre-Hodge's negligence claim without prejudice to him pursuing the claim in state court.

## B. Aguirre-Hodge's motion to amend the complaint

After the parties finished briefing summary judgment, Aguirre-Hodge moved to amend his complaint to name members of the Bureau of Health Services as defendants, contending that they violated his rights by denying Larson's prior authorization request. Dkt. 102. Although leave to amend should be freely given, Fed. R. Civ. P. 15(a), "district courts have broad discretion to deny leave

to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

It is simply too late for Aguirre-Hodge to amend his complaint at this point. Aguirre-Hodge filed his proposed amended complaint five months after the dispositive motion deadline and over a month after the close of discovery. Allowing Aguirre-Hodge to add new claims against new defendants would require restarting the case from scratch; the court would need to reopen discovery and set a new

schedule. It would significantly delay disposition of this case, which had been pending for more than three years by the date Aguirre-Hodge moved to amend his complaint. Courts have denied leave to amend under similar circumstances. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (denying leave to amend where plaintiff waited until "three days before the close of fact discovery" to add new claims and a new defendant); *Bowden v. Kirkland & Ellis LLP*, 432 Fed. App'x 596, 600 (7th Cir. 2011) ("the [district] court reasonably concluded that adding new defendants would

unduly delay disposition of the case by triggering another round of discovery or flurry of motions").

Aguirre-Hodge does not explain why he waited until after the close of discovery to amend his complaint. I acknowledge that Aguirre-Hodge has vision problems and has required extensions for certain deadlines. But Aguirre-Hodge knew that members of the Bureau of Health Services denied Larson's prior authorization request in October 2021; he attached the form denying his prior authorization to his motion for summary judgment. *See* Dkt. 77-1, at 18. And Larson explained the approval process in his summary judgment

submissions in November 2021. *See* Dkt. 83; *Hukic*, 588 F.3d at 432 (denying amendment when the basis for the new claim was "available long before [plaintiff] sought leave to amend"). I will deny Aguirre-Hodge's motion to amend his complaint.

## ORDER

IT IS ORDERED that:

1. Plaintiff's motion for summary judgment, Dkt. 75, is DENIED.

2. Defendant's motion for summary judgment, Dkt. 82, is GRANTED on plaintiff's constitutional claim, which is DISMISSED with prejudice.

3. Plaintiff's state-law negligence claim is DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

4. Plaintiff's motion to amend his complaint, Dkt. 102, is DENIED.

5. The clerk of court is directed to enter judgment for defendant and close this case.

Entered August 30, 2022.

BY THE COURT:

_/s/_____

JAMES D. PETERSON
District Judge